UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JOHN ROBIN                                    CIVIL ACTION NO. 6:13-cv-02347

VERSUS                                        JUDGE DOHERTY

COMMISSIONER OF THE SOCIAL                    MAGISTRATE JUDGE HANNA
SECURITY ADMINISTRATION


## REPORT  AND  RECOMMENDATION


Before this Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be reversed and benefits

awarded.

### BACKGROUND

The claimant, John Robin, was born on December 9, 1967.[1]  He graduated from

high school[2] and completed vocational training in civil engineering.[3]  Mr. Robin

served in the Marines from December 1985 to July 1988.[4]  He was discharged from

---

[1]      Rec. Doc. 5-1 at 93.

[2]      Rec. Doc. 5-1 at 37.

[3]      Rec. Doc. 5-1 at 38, 384.

[4]      Rec. Doc. 5-1 at 38, 94.

the Marines for medical reasons[5] following an accident in which he was shocked by an overhead high voltage electric line while climbing on a tank and then fell several feet to the ground.[6]  He lost consciousness, was burned over twenty-five percent of his body, and injured his head and back in the fall.[7]  The Veterans Administration assigned him a ten percent disability rating for the burns and a twenty percent disability rating for the back injury,[8] which was later increased to forty percent disability.[9]  After that incident, he worked as a surveyor, a delivery route driver, a light truck drier, and a tractor trailer driver.[10]  Mr. Robin continues to treat at the Veterans Administration Medical Center in Alexandria, Louisiana for the injuries sustained while he was in the Marine Corps.

In December 2005, while Mr. Robin was driving a truck in the course of his employment, the truck's axle malfunctioned, causing the vehicle to stop suddenly and pitch Mr. Robin's body violently forward.  This injured his left shoulder and cervical

---

[5]      Rec. Doc. 5-1 at 38, 49.

[6]      Rec. Doc. 5-1 at 394-395.

[7]      Rec. Doc. 5-1 at 268-271, 394-395.

[8]      Rec. Doc. 5-1 at 39, 259-266.

[9]      Rec. Doc. 5-1 at 387.

[10]      Rec. Doc. 5-1 at 136.

spine, resulting in neck pain, headaches, and nerve damage.  On March 25, 2006, Mr. Robin stopped working due to the pain resulting from this accident.

Mr. Robin was treated for his injuries primarily by Dr. Michael Burnell (family practitioner), Dr. Ricardo Leoni (neurologist), Dr. James Domingue (neurologist), Dr. Norman Anseman Jr. (physical medicine and rehabilitation specialist), Dr. Steve Rees (pain management specialist), and Dr. George R. Williams (orthopaedic surgeon).

Dr. Burnell ordered an MRI of Mr. Robin's left shoulder, which was performed on April 26, 2006 and showed a mild partial tear of the supraspinatus tendon as well as mild AC joint hypertrophy with spurring of the undersurface of the acromion process, creating a predisposition to nerve impingement.[11]  An MRI of the cervical spine performed on December 13, 2006 showed degenerative disc disease with disc extrusion at C5-C6 and C6-C7.[12]  Based on the cervical MRI, Dr. Burnell referred Mr. Robin to Dr. Leoni.[13]

A June 4, 2007 MRI of Mr. Robin's cervical spine showed degenerative changes at C5-C6 (mild to moderate right neural foramen narrowing) and C6-7 (mild right foramen narrowing) as well as a dorsal disc protrusion at C5-6 with dorsal disc

---

[11]     Rec. Doc. 5-1 at 191.

[12]     Rec. Doc. 5-1 at 173.

[13]     Rec. Doc. 5-1 at 177.

osteophyte change producing effacement of the CSF space and flattening of the ventral spinal cord.[14]   On July 2, 2007, Dr. Leoni performed an anterior cervical microdiscectomy with interbody fusion, allograft, and plating at C5-C6, having found that there was a herniated disc at C5-C6 with secondary radiculopathy.[15]   Mr. Robin initially experienced relief from his symptoms, but his neck and arm pain returned a few months after the surgery was performed.[16]

Because Mr. Robin continued to complain of neck pain, occasional pain in his forearms and elbows, and intermittent numbness and tingling in his lands, Dr. Leoni referred Mr. Robin to Dr. Domingue.  On January 23, 2008, Dr. Domingue performed tests that revealed bilateral lesions of the ulnar nerves at the wrists and the right median nerve at the wrist.[17]   On that same date, Dr. Domingue opined that Mr. Robin's ongoing musculoskeletal pain was severe enough to prevent him from returning to work.[18]

Because Mr. Robin was having only slow progress with physical therapy and Botox injections had led to only limited improvement, Dr. Domingue referred Mr.

---

[14]     Rec. Doc. 5-1 at 258.

[15]     Rec. Doc. 5-1 at 41, 237-242.

[16]     Rec. Doc. 5-1 at 42, 289, 386.

[17]     Rec. Doc. 5-1 at 290, 297.

[18]     Rec. Doc. 5-1 at 291.

Robin to Dr. Anseman for further treatment.[19]   On July 3, 2008, Dr. Anseman[20] diagnosed Mr. Robin with cervical facet arthropathy at C5-6 and C6-7 bilaterally (adhesive capsulitis of the facet joints).  Dr. Anseman observed severe limitations in the range of motion in Mr. Robin's neck and also noted severe muscle spasms.  Dr. Anseman attributed some of Mr. Robin's pain to adhesions that formed on the facet joints of his cervical spine.  He recommended facet joint injections, injections in the suprascapular muscles, massage therapy, interferential therapy, home exercises, a posture brace, and medications to control Mr. Robin's nervous tension, stress, and anxiety.  Dr. Anseman specifically noted that he found no signs that Mr. Robin was malingering.

On March 2, 2009, Mr. Robin was evaluated by Dr. Rees, a pain management physician, at the request of Dr. Anseman.  Dr. Rees's notes[21] indicate tenderness over the cervical facets and bilateral occiputs, only fifty percent cervical rotation, decreased sensation in a C5-6 distribution on the right and decreased sensation in the left pinky finger, 4+/5 weakness in the right upper extremity, and trigger points in the bilateral trapezius, levator scapulae, and rhomboids.  He diagnosed status post

---

[19]     Rec. Doc. 5-1 at 299.

[20]     Dr. Anseman's comprehensive evaluation is in the record at Rec. Doc. 5-1 at 276-280.

[21]     Rec. Doc. 5-1 at 352-355.

anterior cervical fusion, chronic cervicalgia, chronic pain, and cervicogenic headaches. On April 29, 2009, Dr. Rees administered left C3, C4, C5, and C6 medial branch blocks.[22]  On September 14, 2009, Dr. Rees administered further medial branch blocks.[23]

An MRI of Mr. Robin's cervical spine, on October 23, 2009, revealed disc dessication with a mild posterior osteophyte complex at C6-7, which was flattening the thecal sac ventrally with mild to moderate narrowing of the right neural canal secondary to spondylosis.[24]

An MRI of the lumbar spine was performed on December 30, 2009, which revealed degenerative disc changes with mild annular bulging at T12-L1 and mild annular bugling at L4-L5 and L5-S1 as well as small bulges and annular fissures mildly indenting the ventral thecal sac.[25]

Mr. Robin continued to complain of both neck pain and lower back pain.[26]  On May 7, 2010, Dr. Rees opined that Mr. Robin was unlikely to substantially improve from his current condition, would require ongoing pain management, and could try

---

[22]     Rec. Doc. 5-1 at 678.

[23]     Rec. Doc. 5-1 at 672-673.

[24]     Rec. Doc. 5-1 at 643-644.

[25]     Rec. Doc. 5-1 at 667-668.

[26]     Rec. Doc. 5-1 at 664.

to return to work for four hours per day.[27]  Dr. Rees treated Mr. Robin from 2009

through 2011, and Mr. Robin consistently reported pain worsened by activity, sleep

problems, and limited pain relief from medication, electrical stimulation, and physical

therapy.  A September 2010 nerve conduction study revealed sensory neuropathy in

Mr. Robin's lower extremities.[28]  In November 2010, Dr. Rees returned Mr. Robin to

no work status and referred him to Dr. George Williams for surgical evaluation of his

continued neck complaints.[29]

Mr. Robin first saw Dr. Williams on March 1, 2011.[30]  He complained of neck

pain, pain radiating to the shoulders and shoulder blades, cold and tingly hands, and

deep aching pain in the lumbar spine radiating to the hips and calves.  An MRI

conducted on April 6, 2011 showed mild foraminal narrowing bilaterally at C6-7.[31]

On April 12, 2011, Dr. Williams recommended surgery to extend the fusion to

---

[27]     Rec. Doc. 5-1 at 663.

[28]     Rec. Doc. 5-1 at 773, 767.

[29]     Rec. Doc. 5-1 at 654-655.

[30]     Rec. Doc. 5-1 at 638-642.

[31]     Rec. Doc. 5-1 at 637.

include C4-5 and C6-7 due to ongoing degeneration.[32]  Dr. Williams's examination of October 11, 2011 showed numbness in a C6 and C7 distribution.[33]

On May 12, 2011, however, Dr. Leoni, who performed Mr. Robin's 2007 surgery, opined that the additional fusion surgery proposed by Dr. Williams would be unlikely to help Mr. Robin and further opined that "[a]t most he might do sedentary work."[34]

At the request of Mr. Robin's workers' compensation insurer, Dr. Paul Fenn evaluated Mr. Robin on August 17, 2011.[35]  He opined that the risks of further surgery outweighed the benefits, but he did not rule out the possibility of surgery in the future if Mr. Robin's symptoms continued to progress.  Dr. Fenn also opined that Mr. Robin should return to work and suggested that a light or sedentary level might be appropriate.  However, he noted that Mr. Robin might not be able to persist at activity, stating "[t]he concerns regarding duration of activity can be assessed based on his tolerance."  Dr. Fenn also acknowledged that his evaluation excluded from consideration any neurological deficits that might have resulted from the injury Mr.

---

[32]      Rec. Doc. 5-1 at 635.

[33]      Rec. Doc. 5-1 at 632.

[34]      Rec. Doc. 5-1 at 591-592.

[35]      Dr. Fenn's report is in the record at Rec. Doc. 5-1 at 594-600.

Robin sustained while in the military.  In that regard, he recommended that Mr. Robin be evaluated by a neurologist.

Another MRI of the cervical spine was performed in July 2012.[36]  It revealed a broad based disc bulge with a small protrusion at C6-7 effacing the thecal sac with mild central canal stenosis and bilateral neural foraminal stenosis.  It also showed disc bulges at C3-4 and C4-5, mildly indenting the ventral thecal sac.

Mr. Robin treats at the VA for the injuries sustained while he was in the Marines.  On August 29, 2012, VA Nurse Practitioner Sharon Coleman opined, based on a full VA compensation and pension examination, that Mr. Robin's back and neck disabilities "would most likely limit his participation in full-time employment in a sedentary occupation."[37]

Mr. Robin underwent further neck surgery on December 26, 2012, when Dr. George Williams and Dr. Kerry Thibodeaux performed cervical decompression and fusion surgery at C4-5 and C6-7, removed the prior hardware, and installed instrumentation from C4 to C7.[38]  The operative report noted that the doctors encountered "a significant amount of scarring from his previous anterior cervical

---

[36]     Rec. Doc. 5-1 at 623.

[37]     Rec. Doc. 5-1 at 827.

[38]     Rec. Doc. 5-1 at 708-711.

discectomy and fusion" that required "careful, meticulous dissection" to approach the target levels of the spine.  Dr. Williams also noted significant anterior osteophytes and disc displacement.

In April 2007, Mr. Robin applied for Social Security disability benefits, alleging a disability onset date of December 4, 2005[39] due to bulging and herniated discs in his cervical spine and a left shoulder injury.[40]  He was denied benefits.[41]  An administrative hearing was held before Administrative Law Judge ("ALJ") Lawrence T. Ragona on January 7, 2009, and an unfavorable ruling was issued on February 26, 2009.[42]  The ALJ ruled that Mr. Robin was not disabled because he was capable of returning to work at a modified light level.  Mr. Robin appealed the ALJ's decision, and the ruling was reversed and remanded for further administrative action.[43]

A second administrative hearing was held on January 14, 2013 before the same ALJ.[44]  At the hearing, Mr. Robin testified that he was unable to work because he recently underwent a second neck surgery, has nerve damage in both arms, has

---

[39]     Rec. Doc. 5-1 at 93.

[40]     Rec. Doc. 5-1 at 123.

[41]     Rec. Doc. 5-1 at 58.

[42]     Rec. Doc. 5-1 at 25-32.

[43]     Rec. Doc. 5-1 at 434-446, 450-452.

[44]     Rec. Doc. 5-1 at 379-413.

multiple problems with his back, and has neuropathy in his legs and feet.[45]  Mr. Robin also testified that the VA had raised his disability rating to forty percent in December 2012.[46]  He explained that he was unable to work during the five years between neck surgeries due to near constant pain and frequent headaches.[47]  On April 16, 2013, the ALJ issued his second unfavorable decision.[48]   That decision is now the Commissioner's final decision.  In this lawsuit, Mr. Robin now appeals that ruling.

## Assignment of Errors

Mr. Robin contends that the Commissioner's ruling should be reversed because the Commissioner erred (1) in failing to identify lumbar degenerative disease at L4-5 and L5-S1 as a severe impairment or to consider the effects of this impairment in evaluating Mr. Robin's residual functional capacity; (2) in failing to properly evaluate the medical opinion evidence; and (3) in failing to properly evaluate the effect of Mr. Robin's symptoms, including pain, on his functional abilities.

---

[45]     Rec. Doc. 5-1 at 385.

[46]     Rec. Doc. 5-1 at 387.

[47]     Rec. Doc. 5-1 at 396-397.

[48]     Rec. Doc. 5-1 at 363-374.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[49]  If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[50]  Substantial evidence is more than a mere scintilla and less than a preponderance.[51]  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[52]   Finding substantial evidence requires scrutiny of the entire record as a whole.[53]  In applying this standard, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[54]

---

[49]      See, e.g., *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

[50]      42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995), citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

[51]      See, e.g., *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)

[52]      *Boyd v. Apfel,* 239 F.3d at 704; *Hames v. Heckler*, 707 F.2d at 343-44.

[53]      *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[54]      *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

-12-

A claimant seeking Social Security benefits bears the burden of proving that he is disabled.[55]  Disability is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[56]  Substantial gainful activity is defined as work activity that involves doing significant physical or mental activities for pay or profit.[57]

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.  At step two, an individual who does not have a severe impairment will not be found disabled.  At step three, an individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors.  If an individual is capable of performing the work he has done in the past, a finding of not disabled must be made at step four.

---

[55]     *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

[56]     42 U.S.C. § 423(d)(1)(A).

[57]     20 C.F.R. § 404.1572.

If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if the claimant can perform any other work at step five.[58]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[59] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the claimant's record.[60]  The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and is used at the fifth step to determine whether the claimant can adjust to any other type of work.[61]

The claimant bears the burden of proof on the first four steps.[62]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can

---

[58]     See, e.g., *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f).  See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[59]     20 C.F.R. § 404.1520(a)(4).

[60]     20 C.F.R. § 404.1545(a)(1).

[61]     20 C.F.R. § 404.1520(e).

[62]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

perform other substantial work in the national economy.[63]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[64]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[65]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[66]

In this case, the Commissioner found, at step one, that Mr. Robin has not engaged in substantial gainful activity from the alleged onset of disability on December 4, 2005 through December 31, 2011, the date on which he was last insured. This finding is incorrect because Mr. Robin worked until March 25, 2006.[67]  however, there is substantial evidence in the record to conclude that Mr. Robin did not engage in substantial gainful activity from that date through the date on which he was last insured.

---

[63]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[64]     *Fraga v. Bowen*, 810 F.2d at 1304.

[65]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[66]     *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988). See, also, 20 C.F.R. § 404.1520(a)(4).

[67]     Rec. Doc. 5-1 at 123.

At step two, the ALJ found that Mr. Robin has the following severe impairments:  degenerative disc disease of the cervical spine, status post cervical fusion, hypertrophy of the acromioclavicular joint and supraspinatus tendon tear in the left shoulder, sensory neuropathy of the lower extremities, upper extremity abnormalities consistent with bilateral lesions of the ulnar nerves and lesion of the right medial nerve, and disc space narrowing at T12-L1.  This finding is supported by evidence in the record.  Mr. Robin argues that the ALJ erred in not also finding that his lumbar degenerative disc disease at L4-5 and L5-S1 is a severe impairment.

At step three, the ALJ found that Mr. Robin does not have an impairment or a combination of impairments that meets or medically equals a listed impairment.[68]  Mr. Robin argues that this finding is erroneous.

At the next step of the process, the ALJ found that Mr. Robin retains the residual functional capacity to perform sedentary work except that he is unable to perform work above shoulder level and is unable to perform tasks requiring extreme range of motion of the neck.[69]  Mr. Robin argues that this finding was erroneous because it fails to consider the effects of his lumbar degenerative disc disease.  At

---

[68]     Rec. Doc. 5-1 at 47.

[69]     Rec. Doc. 5-1 at 367.

-16-

step four, the ALJ found that Mr. Robin is unable to perform his last relevant work.[70]

At step five, the ALJ applied the Medical-Vocational Rules as a framework and found

that Mr. Robin is not disabled regardless of whether he has any transferable job

skills.[71]  The ALJ then concluded that Mr. Robin was not disabled from his alleged

onset date of December 4, 2005 through December 31, 2011, the date he was last

insured.[72]  Mr. Robin disputes that finding.

## DISCUSSION

This matter was remanded in 2011 because the ALJ failed to consider all of Mr.

Robin's medically determinable impairments, relied on a stale and incomplete

functional capacity evaluation, and made a credibility determination based on a

misinterpretation of medical records, resulting in a residual functional capacity

determination that was not supported by substantial evidence in the record.

Additional medical records were placed in the record, a second administrative hearing

was held, and the ALJ rendered another ruling.  Mr. Robin now complains that the

second ruling is also erroneous.

---

[70]     Rec. Doc. 5-1 at 372.

[71]     Rec. Doc. 5-1 at 372.

[72]     Rec. Doc. 5-1 at 373.

**A.**     **Did the ALJ Err in Failing to Identify Mr. Robin's Lumbar Degenerative Disease at L4-5 and L5-S1 as a Severe Impairment or in Failing to Consider the Effects of this Impairment in Evaluating Mr. Robin's Residual Functional Capacity?**

This matter was specifically remanded for the purpose of having the Commissioner consider Mr. Robin's complaints of low back pain.  In his second ruling, the ALJ found that one of Mr. Robin's severe impairments is disc space narrowing at T12-L1, but he did not find that Mr. Robin's degenerative disc disease at L4-5 and L5-S1 is a severe impairment, despite the fact that the December 30, 2009 MRI of the lumbar spine revealed not only degenerative disc changes with mild annular bulging at T12-L1 but also mild annular bulging at L4-L5 and L5-S1 along with small bulges and annular fissures mildly indenting the ventral thecal sac.[73]  The objective findings concerning the lower level of the spine, combined with Mr. Robin's continued complaints of low back pain that are consistently reported throughout the record over a long period of time, provide substantial evidence for a conclusion that the degenerative changes at the lower level of the spine constitute a severe impairment.  It was error for the ALJ to find otherwise at step two of the prescribed sequential analysis.

---

[73]     Rec. Doc. 5-1 at 667-668.

Furthermore, the ALJ did not properly evaluate whether the combination of Mr. Robin's impairments medically equal a listed impairment. The ALJ focused on the fact that Mr. Robin's doctors have never noted that he exhibits muscle atrophy. One of the criteria for Listing 1.04, disorders of the spine, is atrophy with associated muscle weakness. Finding that one criterion absent, the ALJ found that Mr. Robin's impairments do not satisfy that listing, stating that "[t]hough the claimant has intermittently had some of the abnormalities required by listing 1.04, he has never had any atrophy."[74] That finding is supported by substantial evidence in the record. But the ALJ also used the absence of any documented atrophy as the basis for finding that Mr. Robin's impairments, when considered altogether, do not medically equal a listed impairment. This was error.

The sequential analysis recognizes that a person with an impairment or a variety of impairments that do not meet a particular listing might still be disabled if the combined effect of all of his impairments is medically equivalent to a listed impairment. A claimant's impairment is medically equivalent to a listing if it is "at least equal in severity and duration to the criteria of any listed impairment."[75] "The claimant must provide medical findings that support each of the criteria for the

---

[74]     Rec. Doc. 5-1 at 367.

[75]     20 C.F.R. § 404.1526(a).

equivalent impairment determination."[76]   The symptoms, signs, and laboratory findings of the claimant's impairment must be equal in severity to the symptoms, signs, and laboratory findings of a listed impairment.[77]

In this case, the ALJ failed to analyze whether the long list of severe and less than severe impairments identified by Mr. Robin and his treating physicians and documented in the record of this proceeding have a combined effect that is medically equivalent to a listed impairment.  Mr. Robin exhibits a complex array of symptoms caused by objectively identified conditions, particularly with regard to his spine.  He has undergone two surgeries on his cervical spine resulting in fusion of the discs from C4 to C7, he has narrowing of the disc space at T12-L1, and he has degenerative disc disease at L4-L5 and L5-S1.  He has been diagnosed with nerve damage in his arms and neuralgia in his legs and feet, and he has a long history of debilitating headaches. In effort to ameliorate the pain resulting from these conditions, he has taken prescribed medications, undergone physical therapy, worn a brace, used a TENS unit, had multiple injections of steroids and Botox, undergone nerve block procedures, and had two surgeries to his cervical spine.  Yet the ALJ did not analyze whether this combination of impairments is medically equivalent to any listing.

---

[76]   Selders, 914 F.2d at 619.

[77]   20 C.F.R. § 404.1529(d)(3).

The ALJ also failed to obtain an opinion from a physician concerning medical equivalence.  While the final decision regarding medical equivalence is reserved to the ALJ, the judgment of a physician regarding medical equivalence must be received into the record as expert opinion evidence.[78]  The record contains a consultative functional capacity evaluation by Dr. Fenn, but the issue of medical equivalence is not addressed in his report nor is it addressed in the reports of any of Mr. Robin's treating physicians.

In summary, the ALJ did not properly evaluate medical equivalence at step three of the requisite analysis.

Finally, the ALJ improperly discounted the effect of the degenerative disc disease in Mr. Robin's lumbar spine when evaluating his functionality.  This will be discussed in greater detail, below.

## B.    Did the ALJ Err in Failing to Properly Evaluate the Medical Opinion Evidence?

An ALJ errs when he substitutes his own judgment for that of the claimant's treating physicians or rejects their opinions based on his own criteria.[79]  In this case, the ALJ found that Mr. Robin is capable of performing sedentary work that does not

---

[78]    SSR 96-6p.

[79]    *Williams v. Astrue*, 355 F. App'x 828, 832 (5th Cir. 2009), citing *Ripley v. Chater*, 67 F.3d 552, 557–58 (5th Cir.1995).  See, also, *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

require a full range of motion in the neck or the execution of overhead tasks.  In making this finding, he improperly discounted the opinions of Mr. Robin's physicians and substituted his own judgment for theirs.

The ALJ reviewed Mr. Robin's activities, which include occasionally fishing and hunting with his son "every now and then" but mostly sitting at the camp and waiting while his son hunts.[80]  He also occasionally mows the lawn while sitting on a riding mower "depending on how I feel."[81]  Mr. Robin testified that his symptoms, particularly his pain, increase following these activities.  Nevertheless, the ALJ stated that Mr. Robin can do sedentary work because it requires less exertional capacity than does mowing the lawn, hunting, or fishing.[82]  There is no scientific or medical evidence in the record to support that conclusion; consequently, the ALJ did not rely on substantial evidence in the record when basing a finding on that unsupported assertion.

The ALJ also reviewed the opinions of Mr. Robin's physicians concerning his ability to return to work.  "While the ALJ may choose which opinions to rely on, 'he cannot. . . independently decide the effects of Plaintiff's. . . impairments on [his]

---

[80]     Rec. Doc. 5-1 at 403.

[81]     Rec. Doc. 5-1 at 389.

[82]     Rec. Doc. 5-1 at 371.

ability to work, as that is expressly prohibited. . . ."[83]   Again, however, the ALJ formulated his own opinion based on a lack of muscle atrophy, stating that although Dr. Anseman found no evidence that Mr. Robin was malingering, "the lack of any atrophy two and a half years after the initial injury does suggest that the claimant's activities are not so limited as to preclude sedentary work."[84]   This statement indicates that the ALJ was inappropriately substituting his own opinion for that of Dr. Anseman.

A careful review of the other physicians' opinions shows that they do not support the ALJ's conclusion that Mr. Robin can perform sustained sedentary work. Dr. Fenn, the consultative orthopedist, opined that Mr. Robin is able to perform at least sedentary work, but he admitted that he has concerns about the duration of activity that Mr. Robin can engage in, which he recommended should "be assessed based on his tolerance;" he also declined to consider the neurologic effects of Mr. Robin's low back condition and suggested that a neurological consultation be scheduled.[85]   Therefore, his opinion does not support the ALJ's conclusion that Mr. Robin can return to full time sedentary employment.

---

[83]      *Shugart v. Astrue*, No. 3:12–CV–1705–BK, 2013 WL 991252, at *5 (N.D.Tex. Mar.13, 2013), citing *Ripley v. Chater*, 67 F.3d 552, 557–58 (5th Cir. 1995).

[84]      Rec. Doc. 5-1 at 369.

[85]      Rec. Doc. 5-1 at 599.

The ALJ's analysis of the opinions of Dr. Rees, Dr. Leoni, and Dr. Williams is similar.  In May 2010, Dr. Rees opined that Mr. Robin was likely at maximum medical improvement for his neck and suggested that he "try a light-duty trial beginning at four hours a day and reevaluating from there."[86]  Just a few months later, in November 2010, however, Dr. Rees returned Mr. Robin to "no work status."[87]  In May 2011, Dr. Leoni stated that "[a]t most he might do sedentary work,"[88] and in June 2011, Dr. Williams confirmed that he thought Mr. Robin "could try a trial status of SEDENTARY work."[89]  None of these doctors opined that Mr. Robin was capable of performing sedentary work on a sustained basis such as is necessary for a finding of nondisability.

The ALJ gave significant weight to the opinions of the VA medical examiners with regard to Mr. Robin's ability to lift, walk, and work overhead.[90]  But he did not mention the opinion of VA Examiner Nurse Practitioner Sharon N. Coleman, who

---

[86]    Rec. Doc. 5-1 at 663.

[87]    Rec. Doc. 5-1 at 654.

[88]    Rec. Doc. 5-1 at 591.

[89]    Rec. Doc. 5-1 at 590.

[90]    Rec. Doc. 5-1 at 372.

stated on August 29, 2012, that Mr. Robin's impairments would likely interfere with his ability to perform sedentary work.[91]

The critical opinions are those of Mr. Robin's treating physicians – Dr. Leoni, Dr. Rees, and Dr. Williams – given during 2010 and 2011 before Mr. Robin's insured status expired.  Each of them opined that Mr. Robin might be able to try sedentary employment but none of them opined that he can likely perform such work on a sustained basis.  Dr. Fenn's opinion is consistent, and there is no contrary medical evidence in the record.  Thus, the substantial evidence in the record does not support the ALJ's conclusion that Mr. Robin retains the residual functional capacity to perform sedentary work, and the ALJ erred in reaching that conclusion.

**C.    Did the ALJ Err in Failing to Properly Evaluate the Effect of Mr. Robin's Symptoms on his Functional Abilities?**

The ALJ found that Mr. Robin retains the residual functional capacity to perform sedentary work.  Sedentary work involves sitting for about six hours out of an eight hour work day and occasionally lifting items weighing no more than 10

---

[91]    Rec. Doc. 5-1 at 827.  The ALJ may have legitimately chosen to ignore Ms. Coleman's opinion because it postdated Mr. Robin's insured status.

pounds.[92]  Having to alternate between sitting and standing in order to work the entire day does not fit within the definition of sedentary work.[93]

In making a residual functional capacity assessment, an ALJ must consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  The ALJ must consider the limitations and restrictions imposed by all of an individual's impairment, even those that are not severe.[94]

In this case, the ALJ's residual functional capacity is not supported by substantial evidence.  As noted above, objective testing revealed that Mr. Robin has degenerative disc disease in his lumbar spine, and the undersigned found, above, that the ALJ erred in failing to find that this is a severe impairment.  Mr. Robin testified that the pain resulting from his lumbar condition prevents him from sitting for more than approximately thirty minutes at a time.[95]  He also testified that sitting at a table or desk and, for example, working on a computer is difficult for him because his shoulders and hands start to ache and then his hands become very cold, which would

---

[92]    *Lawler v. Heckler*, 761 F.2d 195, 197–98 (5th Cir. 1985); 20 C.F.R. § 404.1567(a).

[93]    *Scott v. Shalala*, 30 F.3d 33, 34 (5th Cir. 1994).

[94]    See 20 C.F.R. §§ 404.1545, 416.945(a)(2).

[95]    Rec. Doc. 405-406.

make a full day's work unsustainable.[96]  The ALJ's residual functional analysis takes into account Mr. Robin's cervical spine problems to the extent that it restricts him to work that does not require that he perform any tasks above shoulder level or any tasks that require an extreme range of motion of the neck, but it does not take into account Mr. Robin's stated problem with long-term sitting.  There is no basis for discounting Mr. Robin's credibility in that regard, since he has a medically-documented condition of the spine that causes the pain and none of his treating physicians opined that he is capable of returning to full-time employment in a sedentary position.  Furthermore, the ALJ focused on intermittent activities performed by Mr. Robin to find that he lacked credibility but failed to give proper consideration to his consistent complaints of pain over a long period of time despite extensive efforts through various modalities including but not limited to medication, physical therapy, and surgery to alleviate his unremitting pain.  Therefore, the ALJ's residual functional capacity assessment is flawed.

## CONCLUSION AND RECOMMENDATION

Having found that the Commissioner's decision is flawed, the only issue left to decide is whether to reverse and remand for further proceedings before the ALJ or for an award of benefits.  The fourth sentence of 42 U.S.C. § 405(g) provides that

---

[96]      Rec. Doc. 5-1 at 406.

"[t]he [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  When an ALJ's decision is not supported by substantial evidence, and the uncontroverted evidence clearly establishes the claimant's entitlement to benefits, the case may be remanded with instructions to award benefits.[97]   When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits.[98]

In this case, the record establishes that the motor vehicle accident of December 2005 was Mr. Robin's second serious accident and that he has undergone a myriad of treatments since then, all of which failed to significantly improve his physical condition or his pain symptoms.  He stopped working on March 25, 2006 due to the pain from his neck injury and has not returned to the work force since that date.

Mr. Robin has been seeking benefits since 2007.  Two hearings have been held, and two adverse rulings have been issued by the ALJ, even after this Court ordered the case to be heard again.  In his first ruling, the ALJ failed to consider all of Mr.

---

[97]     See *Taylor v. Bowen*, 782 F.2d 1294, 1298–99 (5th Cir. 1986).

[98]     See, e.g., *Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985).

Robin's medically determinable impairments, relied on a stale and incomplete functional capacity evaluation, and made a credibility determination based on a misinterpretation of medical records, resulting in a residual functional capacity determination that was not supported by substantial evidence in the record.   In his second ruling, the ALJ again failed to identify all of Mr. Robin's severe impairments, did not properly evaluate medical equivalence, improperly substituted his own opinion for that of Mr. Robin's physicians, and improperly evaluated Mr. Robin's residual functional capacity, again resulting in a decision that was not supported by substantial evidence.

When an ALJ's decision is not supported by substantial evidence, the case may be remanded with instructions to make an award if the record enables the court to determine definitively that the claimant is entitled to benefits.  This is such a case. Substantial evidence in the record supports a finding that Mr. Robin is not capable of performing sedentary work.  Furthermore, it would not be in the best interest of the claimant, nor would it serve justice, to remand the case for further proceedings.[99]

---

[99]      See. e.g., *Shugart v. Astrue*, 2013 WL 991252, at *6 (reversing and remanding for an award of benefits where the ALJ erred in determining the plaintiff's residual functional capacity and the case had been pending for seven years, been before an ALJ three times, and the record consists of nearly 2,000 pages); *Randall v. Sullivan*, 956 F.2d 105, 109 (5ᵗʰ Cir. 1992) (remanding for an award of benefits where case had been pending for over eight years, and the ALJ had relied on the wrong medical record in denying benefits); *Jimmerson v. Apfel*, 111 F.Supp.2d 846, 850–51 (E.D. Tex. 2000) (reversing and remanding for an award of benefits where the ALJ's decision was not supported by substantial evidence, the case had been remanded twice before, and the plaintiff's claim

Accordingly, the undersigned recommends that this case be remanded to the Commissioner for an award of benefits in Mr. Robin's favor.

The undersigned fully reviewed the entire record on this matter, finds that the Commissioner erred in reaching the final decision in this matter and finds that the decision was not supported by substantial evidence.  Accordingly,

IT IS RECOMMENDED that this case be REVERSED and REMANDED to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g), with instructions that the application for Social Security disability benefits be granted and for computation and payment of an award of benefits beginning March 25, 2006.

Inasmuch as the remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA).[100]

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of

---

had been pending for eight years).

[100]     See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir.1992), and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 18th day of August 2014.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

COPY SENT:

DATE:   8/18/2014
BY:           EFA
TO:           RFD
              cg

-31-